R. H. "Dick" WELCHER, Esther Welcher,
Plaintiffs in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–16578.

Court of Criminal Appeals of Oklahoma.

May 5, 1971.

Ungerman, Grabel, Ungerman & Leiter, Tulsa, for plaintiffs in error.

Larry Derryberry, Atty. Gen., Mike D. Martin, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

R. H. "Dick" Welcher and Esther Welcher were charged, tried and convicted in the District Court of Tulsa County, for the offense of Obtaining Property by Trick or Deception; their punishment was set at fines of $50.00 each, and from said judgments and sentences, a timely appeal has been perfected to this Court.

The evidence adduced on behalf of the State of Oklahoma consisted first of testimony of one Arnold Mashburn, who identified himself as an employee of the Safeway Store at 11th and Denver in Tulsa, Oklahoma. On or about October 4, 1969, he was a meat cutter, and on the evening of October 4, 1969, he had an occasion to sell some steaks to Esther Welcher, one of the defendants herein. Mrs. Welcher had come into the store alone and had asked him whether he had any steaks put back or cut for her. He advised her that she was to continue her shopping and then later come back to the meat market. He wrapped five T-bone steaks in butcher paper, priced them and gave them to her. He priced the steaks at $1.42, and had seen Mrs. Welcher shopping in the store before this occasion. Mr. Mashburn, during his testimony, identified the other defendant, R. H. "Dick" Welcher. Mashburn also testified that approximately a year before this transaction, that he had had a conversation with Mr. Welcher at the 15th and Lewis Safeway Store, and in that conver-

sation he had advised Mr. Welcher that he could get him steaks pulled out of the counter as they were known by the store employees, "decline" steaks, and that after that initial conversation he did get decline steaks for Mr. Welcher and sell them to him. Mashburn also testified that about a week before October 4, 1969, he had a telephone conversation with Mr. Welcher who had called him and asked about getting some steaks and Mashburn testified that he told him that he did get them for him; that shortly before October 4, 1969, Mashburn had another conversation with Welcher and in that conversation advised Welcher that he would have to quit selling him the meat as he had in the past, as Mashburn was afraid the store would get on to him.

On cross-examination, Mashburn testified that when he used the expression "decline" meat, he meant meat that had turned dark while in the counter and because of this, the butcher would pull it out, retrim it or bone it out, and that it then would be sold at a reduced price. On re-direct examination Mashburn testified that on occasions he had sold a variety of meat directly from the counter at a reduced price to Mr. Welcher. Mr. Mashburn also testified that the actual value of the meat that he sold to Mrs. Welcher was roughly $7.00, although he marked it $1.42 on the wrapper.

The Assistant Manager, the Manager, and a package boy, testified substantially to the same facts. The Manager attempted to stop the vehicle driven by Dick Welcher and stated that the car drove off at a high rate of speed.

Bob Randolph, a deputy sheriff, was employed part-time as a security guard at the store. After a discussion with the manager, and observing a car leave at a high rate of speed, he pursued the car. He arrested Dick Welcher in front of his home and took the five steaks from a package from his vehicle.

The State, thereupon, rested its case and the defense called Esther Welcher who tes-

tified that she was at the Safeway Store at 11th and Denver on October 4, 1969, doing her weekly shopping. She was driven to the store by her husband and the five year old child of Mr. Welcher was with them. On this particular occasion it was very warm and the air conditioner in the car was running. Mr. Welcher stayed in the car while she and the young child did the shopping. She asked Mr. Mashburn if he had any meat for her and Mashburn said, "Yes, go ahead and do the rest of your shopping and stop back by the meat counter." She continued her shopping, returned to the meat counter and got the package from Mashburn. She did not have an opportunity to look at the package, but there was a price on it. She went out the check stand, paid her bill, and the package boy took the sacks of groceries out to her car for her, which consisted of four large sacks and one small sack. She saw no one trying to stop the automobile while leaving the parking lot; she paid for the groceries and had shopped at the Safeway Store before. She called the police to her home as a result of the activities of Mr. Randolph.

On cross-examination, Mrs. Welcher testified that she was 23 years old and that she knew Mashburn and had known him for six or seven months. She had purchased meat from him before at a discounted price. It was her understanding that Mashburn would sell them decline meat which was to be ground up for hamburger meat. Usually the store employees got the first choice, and Mashburn would then sell them the meat which was left over. She testified that sometimes she would buy meat from Mashburn, and sometimes she wouldn't and that she did not buy it from him every time she went grocery shopping. The meat she bought from Mashburn was always wrapped in white paper and she never had any conversations with Mashburn and that when they left the parking lot of the store on October 4, 1969, their car left at a normal rate of speed. She saw no one approaching their car and say-

ing anything to them prior to leaving. She and her husband proceeded home and they were followed by a person whom they did not know, in an unmarked car, pointing a gun at them, and as soon as the car stopped at their house, she and the young child went into the house and she called the police because she did not know who Randolph was at that time.

Thereupon, the defendants rested and the State recalled Bob Randolph as a rebuttal witness. On rebuttal, Randolph testified that he pursued the automobile from the vicinity of the store to the address on East 21st Street, at a high rate of speed; that he had a pistol out and was pointing it at them during the chase and Mr. and Mrs. Welcher were ducking down in the car. On cross-examination, Randolph testified that he was driving an unmarked car and he was not in uniform; that he did not have a siren on his vehicle and that he did not have a red light on his vehicle. The only identification he had, at this particular time, was a Sheriff's Commission. Thereupon, both sides rested their case.

We do not deem it necessary, in this opinion to discuss all of the defendants' propositions. We need only observe that the arrest was illegal, the search was illegal, and that the State's evidence, viewed in its best light, failed to prove that a crime was committed. The alleged conspiracy originated a year ago, some seven months prior to the marriage of the defendants, wherein Dick Welcher asked Mashburn if he could furnish him declines, or old meat. Mashburn, thereafter, for some unknown reason, started to furnish the defendants meat at a reduced price. The record is totally devoid of any evidence showing any financial agreement or other consideration between Mashburn and the defendants.

The judgments and sentences are accordingly reversed and remanded with instructions to dismiss.

NIX and BRETT, JJ., concur.